IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET LUNDSTROM,<br><br>Plaintiff,<br><br>v.<br><br>CONTRA COSTA HEALTH SERVICES,<br><br>Defendant. | Case No. 22-cv-06227-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

    <u>Pro se</u> Plaintiff Margaret Lundstrom ("Lundstrom") alleges that her former employer, Defendant Contra Costa Health Services ("CCHS"), violated the Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008 ("ADAAA") by discriminating and retaliating against her on the basis of a perceived disability. Compl. (dkt. 1). CCHS moves to dismiss Lundstrom's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Lundstrom is neither disabled nor a qualified individual under the ADA, and that she has not sufficiently alleged that CCHS's actions were retaliatory. Mot. (dkt. 5). Lundstrom opposed CCHS's motion, and CCHS replied. Response to Defendant's Motion to Dismiss and Memorandum of Law ("Opp'n") (dkt. 10); Reply (dkt. 16). Finding this case suitable for resolution without oral argument under Civil Local Rule 7-1(b), the Court VACATES the hearing currently set for December 16, 2022, and GRANTS the motion with prejudice.

I.   BACKGROUND

A.   Lundstrom's Allegations[1]

Lundstrom worked as a Public Health Nurse Case Manager for CCHS's CommunityConnect program from May 15, 2017, until December 7, 2021. Compl. ¶ 112; Lundstrom's Affidavit in Support of Complaint ("Affidavit") (dkt. 1) ¶¶ 9, 43. In March 2020, at the beginning of the global COVID-19 pandemic, Lundstrom volunteered to join CCHS's "COVID team," mainly working from home until the CommunityConnect team was "fully deployed" in July 2020. Affidavit ¶ 10.

Lundstrom returned to in-person work in April 2020,[2] by which point CCHS management had implemented a policy requiring daily temperature checks and mask-wearing for employees during work hours. Id. ¶ 11. In April or May 2020, Lundstrom opted to work from home again. Id. ¶ 12. Between that time and December 2020, Lundstrom's supervisors informed her that, in order to work, healthcare workers like her were required to undergo continuous testing. Id. ¶ 13. In that time period, Lundstrom felt that CCHS's COVID-19 policies reflected that CCHS "considered [her] a continual health risk, as though at every moment [she] presented a contagious risk to others . . . ." Id.

In a meeting with her colleagues on January 7, 2021, Lundstrom acknowledged that she did not intend to get the COVID-19 vaccine. Id. ¶ 14. In March 2021, after taking a course offered by the Center for Disease Control ("CDC") on infection control in nursing homes, Lundstrom started to "deeply question" CCHS's COVID-19 policies. Id. ¶ 15–16. Lundstrom went on leave to "process this information."[3] Id. ¶ 16. During her leave, Lundstrom was "redeployed" to CCHS's vaccine branch. Id.

In May 2021, Lundstrom contacted her union representatives to inquire about why

---

[1] The Court takes these allegations from the complaint and assumes them to be true for the purposes of this motion.
[2] Lundstrom's statement that she returned to in-person work in April 2020 conflicts with her prior statement that she mainly worked remotely until July 2020. See Affidavit ¶¶ 10–11. Neither the complaint nor the affidavit clarifies this inconsistency.
[3] Lundstrom states that she took "FMLA time-off from CCHS to process" what she learned in the March 2021 course, but she does not specify whether she took time off from work entirely or went on leave from a particular job assignment (i.e., her roles in CCHS's CommunityConnect program and COVID team). See Affidavit ¶¶ 15-16.

CCHS "was refusing to approve medical accommodations." Id. ¶ 17. A union representative informed Lundstrom that CCHS was not required to provide such accommodations, and this response reinforced Lundstrom's belief that CCHS's COVID-19 policies were discriminatory. Id.

On June 7, 2021, when Lundstrom was set to return to work in CCHS's vaccine branch after her leave, Lundstrom informed her supervisor that she refused to administer the "experimental" COVID-19 vaccines to patients because it was her "ethical duty to refuse to administer[] experimental 'vaccination' per the American Nurses Association Code of Ethics for Nurses." Id. ¶ 20. In response, CCHS's Personnel/Payroll Director, Dorette McCollumn ("McCollumn"), told Lundstrom that she could use more accruals and remain on leave until July 5, 2021. Id.

Lundstrom resumed her work as a CommunityConnect Case Manager on July 6, 2021. Id. ¶ 21. Lundstrom was informed that, because she was unvaccinated, she was required to undergo weekly testing and provide a temperature reading before entering the building.[4] Id. Although Lundstrom felt that CCHS's weekly testing requirement for unvaccinated workers was discriminatory, she took weekly, self-purchased saliva tests. Id. ¶¶ 21, 23.

After testing herself twice for COVID-19 in August 2021, Lundstrom decided to "officially claim all [her] rights protected by the ADA and start documenting [her] opposition to [CCHS's] discriminatory policy . . . ." Id. at ¶¶ 25–26. Lundstrom mailed a "Notice of Discrimination and Harassment Based Upon Disability" to McCollumn, who forwarded the notice to Ann Elliott, CCHS's Director of Human Resources. Id. ¶ 26. On October 1, 2021, Lundstrom met with Ann Elliott and with Barbara Elliott, CCHS's ADA Program Manager. Id. ¶ 29. Lundstrom inquired as to why she was "being regarded as having an infectious disease without an individualized assessment." Id. During the discussion, Barbara Elliott informed Lundstrom that if she did not receive the COVID-19

---

[4] Lundstrom does not specify who informed her about these requirements.

3

vaccine by October 4, 2021, she would face unpaid suspension and eventual termination. Id.

On October 12, 2021, Lundstrom was suspended for ten days without pay for refusing to comply with CCHS's vaccination requirement. Id. ¶ 32–33.

On November 10, 2021, Lundstrom returned to work and was informed that she was required to test for COVID-19 every week. Id. ¶ 38. In response, Lundstrom insisted that "there was no individual assessment to deem [her] a direct threat." Id.

On November 15, 2021, Lundstrom received notice that if she did not comply with CCHS's COVID-19 vaccination requirement, she would be dismissed from her position. Id. ¶ 40. On November 16, 2021, Lundstrom's supervisor informed her that her employment was ending and that she was not allowed to join a meeting on that day. Id. ¶ 41. Lundstrom's access to her work email was also revoked. Id.

On November 24, 2021, Lundstrom attended a disciplinary hearing with ADA Advocate Rie Beckett and CCHS Personnel Officer Jo-Anne Linares ("Linares"). Id. ¶ 42. Lundstrom asserted, inter alia, that she should not be terminated because she was "being regarded as having an infectious disease without having an individualized assessment." Id.

On December 6, 2021, Linares informed Lundstrom that she would be dismissed on December 7, 2021, for failure to provide proof of COVID-19 vaccination and an approved exemption, as required by the California Department of Public Health's State Public Health Officer Order and the Contra Costa County's COVID-19 Mandatory Vaccination Policy. Id. ¶ 43; Ex. A-16 (dkt. 1-16). CCHS terminated Lundstrom's employment on December 7, 2021. Compl. ¶ 14.

Lundstrom filed suit against CCHS on August 8, 2022. Compl. at 1. She summarizes her discrimination and retaliation claims under the ADA and ADAAA as follows:

> Defendant's policies and procedure demonstrate that it discriminated against plaintiff based upon perceived disability. When plaintiff objected and gave notice to the defendant that she was a qualified individual with [a] disability who was being "regarded as" having a disability[,] the defendant continued to

4

> impose accommodations; including but not limited to: medical examinations, medical interventions including mask-wearing; without first conducting an individualized assessment to determine if she was a direct threat. Defendant used policies and procedures to harass, isolate, segregate, limit, classify, deny equal access and impose non-job-related medical exams and inquiries upon plaintiff. Defendant also retaliated against plaintiff by interfering with her rights, imposing punitive measures including isolation and medical examinations, withholding her pay, and ultimately terminating her employment, which is prohibited under the ADA and ADA-AA.[5]

Id. ¶ 27.

### B. CCHS's Motion to Dismiss

CCHS moves to dismiss the complaint, advancing three arguments. See generally Mot. First, CCHS argues that the ADA does not apply to Lundstrom. Id. at 6–9. Second, CCHS argues that its COVID-19 prevention protocols were not retaliatory. Id. at 9–12. Third, CCHS argues that leave to amend should not be granted. Id. at 12–13.

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

---

[5] It is unclear whether Lundstrom intends to assert a failure-to-accommodate claim. However, any such claim would fail. Although the ADA's definition of disability includes an individual who is "regarded as disabled," the ADA only requires employers to accommodate employees where the employee alleges that they have an actual disability or a record of a disability, and not where the employee solely alleges that their employer regards them as disabled. See 42 U.S.C. § 12201(h). The Ninth Circuit has explained that such a rule is desirable because "it seems odd to give an impaired but not disabled person a windfall because of her employer's erroneous perception of disability." Kaplan v. City of N. Las Vegas, 323 F.3d 1226, 1232 (9th Cir. 2003). Thus, under the ADA, Lundstrom cannot make a failure-to-accommodate claim under a "regarded as disabled" theory.

5

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion. Id. (citing Twombly, 550 U.S. at 555). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend "is not to be granted automatically." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296–97 (9th Cir. 1990).

Courts must construe pro se pleadings liberally and hold such pleadings to a less stringent standard than those drafted by attorneys. Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Hughes v. Rowe, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a pro se litigant's complaint] 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers . . . .'" (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972))). A court should dismiss a pro se complaint if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."

6

1   Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

2   **III.    DISCUSSION**

3   As explained below, the Court holds that dismissal without leave to amend is

4   warranted for both of Lundstrom's claims.  The Court addresses Lundstrom's

5   discrimination and retaliation claims in turn.

6   **A.    Discrimination Claim**

7   In her first cause of action, Lundstrom alleges that CCHS unlawfully discriminated

8   against her by "denying [her] access to her workplace, classifying her as unvaccinated,

9   [and] suspending her employment, all due to [CCHS's] perception of [her] as a person

10  with a disability."  Compl. ¶ 74.  CCHS argues that COVID-19, a temporary illness, is not

11  a disability under the ADA, and that, without a recognized disability or perceived

12  disability, Lundstrom cannot state a discrimination claim under the ADA.  Mot. at 6–7.  In

13  response, Lundstrom reiterates that her "claimed disability" was "being regarded as

14  disabled and being recorded as disabled," and asserts that she neither "claimed that the

15  disability she is regarded as having is 'COVID-19'" nor claimed that she had COVID-19

16  or any other disease.[6]  Opp'n at 4–5.

17  To state a claim for disability discrimination under the ADA, a plaintiff must allege

18  that (1) they are disabled; (2) they are qualified for the job (i.e., able to perform the job's

19  essential functions); and (3) they were subjected to an adverse employment action because

20  of their disability.  Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999).

21  The ADA defines a "disability" as a physical or mental impairment that substantially limits

22  one or more major life activities, a record of such an impairment, or being regarded as

23  having such an impairment.  42 U.S.C. § 12102(1)(A)–(C).  Thus, to satisfy the "disabled"

24  element of a disability discrimination claim, a plaintiff may allege that they are disabled,

---

[6] Although Lundstrom denies that the "disability" that CCHS allegedly regarded her as having is COVID-19, Lundstrom's descriptions of the perceived disability in the complaint—alleging that, in the context of the COVID pandemic, she was "perceived as disabled with a contagious disease" and labeled as having impaired immune and respiratory systems—strongly implies that CCHS regarded her as potentially having COVID-19.  Compl. ¶¶ 18–19.  The Court analyzes Lundstrom's claims with that allegation in mind.

7

they had a record of disability, or their employer regarded them as disabled. See id.

Lundstrom alleges that CCHS regarded her as disabled and had a "record of" her as disabled. Compl. ¶¶ 15, 17–20, 27, 43.

Lundstrom's "regarded as" theory—that CCHS perceived her as "disabled with a contagious disease," and impaired immune and respiratory systems—fails. See Compl. ¶¶ 18–19. Under the ADA, being regarded as disabled does not apply to impairments that are "transitory and minor," or impairments with an actual or expected duration of six months or less. 42 U.S.C. § 12102(3)(b). Federal courts generally agree that a COVID-19 infection is not a disability. See, e.g., Roman v. Hertz Local Edition Corp., No. 20-cv-2462-BEN (AGS), 2022 WL 1541865, at *7 (S.D. Cal. May 16, 2022); see also, e.g., McCone v. Exela Techs., Inc., No. 21-cv-912-CEM-DCI, 2022 WL 801772, at *4 (M.D. Fla. Jan. 14, 2022) (holding that a COVID-19 infection does not meet the ADA's definitions of "disability"); Thompson v. City of Tualatin, No. 21-cv-01587-MO, 2022 WL 742682, at *2 (D. Or. Mar. 11, 2022) (holding that being perceived as having COVID-19 is not a cognizable disability under the ADA because most COVID-19 cases last fewer than twenty days). The Court agrees that having COVID-19 is generally "transitory" and therefore not a disability under the ADA. Being perceived of as having COVID-19 is therefore also not a disability under the ADA.

Lundstrom's "record of" theory of disability also fails. To state a claim for disability discrimination based on a record of a disability, a plaintiff must plausibly allege that she has "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2). Here, Lundstrom claims that CCHS "made a record of [her] disability" by misclassifying her as "substantially limited with impaired immune and respiratory systems affecting her ability to perform major life activities in the workplace." Compl. ¶ 29. CCHS's alleged misclassification was that Lundstrom had COVID-19, or something akin to COVID-19. Id. But a record that an employee has a condition that is not a disability does not satisfy the ADA. See 29 C.F.R.

8

1  § 1630.2(k)(2).

2  Amendment of Lundstrom's discrimination claim would be futile. See Leadsinger, Inc., 512 F.3d at 532. Thus, the Court GRANTS CCHS's motion to dismiss Lundstrom's disability discrimination claim with prejudice.

Having concluded that Lundstrom cannot establish a disability that triggers the ADA's protections, the Court need not reach CCHS's argument concerning the second element of a disability discrimination claim: that Lundstrom was not a qualified individual because she posed a direct threat to her coworkers, patients, and clients. See Mot. at 8–9. This argument appears to have merit, however. See Together Emps. v. Mass Gen. Brigham, Inc., 573 F. Supp. 3d 412, 431–33 (D. Mass. 2021) (holding that plaintiff healthcare employees who were not vaccinated against COVID-19 were not "qualified individuals" because they posed a direct threat to other employees' safety, and that the defendant hospital reasonably concluded that unvaccinated employees posed a direct threat to patients and others).

### B.  Retaliation Claim

In her second cause of action, Lundstrom alleges that CCHS "began unceasingly to retaliate against [her] despite [her] reasonable good faith belief that she was exercising protected opposition to discrimination and claiming rights protected under the ADA . . . ." Compl. ¶ 105. Specifically, Lundstrom alleges that CCHS engaged in unlawful retaliation by placing her on unpaid personal leave, threatening to terminate her employment for remaining unvaccinated, and eventually terminating her "because of a perceived disability and as a result of classifying [her] as 'unvaccinated.'" Compl. ¶ 112.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, an employee must show that (1) they engaged in a protected activity, (2) they suffered an adverse employment action, and

9

(3) there was a causal link between the protected activity and the adverse employment action. Pardi v. Kaiser Permanente Hosp., Inc., 389 F.3d 840, 849 (9th Cir. 2004). Lundstrom's claim fails because she has not plausibly alleged that there was a causal connection between her alleged protected activity and her termination.[7]

The core of Lundstrom's retaliation claim is that her required compliance with CCHS's testing, mask-wearing, and COVID-19 vaccination policies violated the ADA because she repeatedly opposed those policies. Compl. ¶¶ 105, 114. However, as Lundstrom and CCHS both note in their pleadings, CCHS's COVID-19 policies were in place before Lundstrom opposed the testing, mask-wearing, and vaccination requirements. Affidavit ¶¶ 13–16; Mot. at 11. CCHS did not enact those policies in response to Lundstrom's actions. Thus, it is unreasonable to infer that there was a causal connection between Lundstrom's criticism of CCHS's policies and her termination. See O'Hailpin v. Hawaiian Airlines, Inc., No. 22-00007 JAO-KJM, 2022 WL 314155, at *11 (D. Haw. Feb. 2, 2022) ("Plaintiffs are unlikely to establish a prima facie case of retaliation . . . because the adverse employment actions . . . appear to be unconnected to their [accommodation] requests. Indeed, the vaccine policy was established, as well as the consequences for failing to comply[,] . . . before Plaintiffs submitted their [accommodation] requests."); Together Emps., 573 F. Supp. 3d at 444–45 (finding that plaintiffs likely could not show a causal connection between protected activity and an adverse employment action where defendant asserted that "plaintiffs [were] subject to unpaid leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy").

---

[7] Lundstrom has also failed to plausibly allege that her opposition to CCHS's COVID-19 policies was protected ADA activity. Protected activity is generally defined as an action that requests an ADA remedy or that challenges a violation of the ADA. 42 U.S.C. § 12203(a). Lundstrom alleges that she raised ADA concerns about CCHS's COVID-19 policies by opposing what she believed to be "discriminatory policies and procedures." Compl. ¶¶ 27, 114. But she has not plausibly alleged that CCHS's policies violated the ADA, or that her unwillingness to abide by them was a request for an ADA remedy, as she was not disabled. But see Speaks v. Health Sys. Mgmt., Inc., No. 22-cv-00077-KDB-DCK, 2022 WL 3448649, at *6 n.9 (W.D.N.C. Aug. 17, 2022) (construing pro se plaintiff's complaint liberally to allege protected ADA activity because they raised concerns about the defendant's COVID-19 policy).

Because CCHS's COVID-19 mitigation and vaccination policies existed before Lundstrom opposed those policies, "it is not reasonable to infer that there was a causal connection between her criticism of the policy and her termination." See Speaks, 2022 WL 3448649, at *6. Amendment of Lundstrom's retaliation claim would be futile. See Leadsinger, Inc., 512 F.3d at 532. Thus, the Court GRANTS CCHS's motion to dismiss the retaliation claim with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: November 29, 2022



CHARLES R. BREYER
United States District Judge